[Crim. No. 17346. Second Dist., Div. Three. Dec. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND STEWART TANNER, Defendant and Appellant.

**COUNSEL**

Gloria E. Reed, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**COBEY, Acting P. J.**—Raymond Stewart Tanner appeals from a judgment of conviction of assault with intent to commit murder (Pen. Code, § 217) entered upon his plea of guilty. The sole issue raised by this appeal is the

correctness of the trial court's refusal to grant appellant's motion to withdraw his plea of guilty and enter instead a plea of not guilty by reason of insanity.[1] We find no error in the trial court's refusal and affirm the judgment.

## THE FACTUAL BACKGROUND

Appellant was originally charged by information with kidnaping, forcible rape and assault with intent to commit murder. These charges arose from an incident involving one Dorothy Pettit. Appellant pled guilty to the assault charge and the other charges were dismissed. The court appointed two psychiatrists to examine appellant to determine whether he might be a mentally disordered sex offender.[2] (See Welf. & Inst. Code, § 5504.) Their report recommended that appellant be sent to Atascadero State Hospital for further study as a "possible" mentally disordered sex offender. As a result of this period of study appellant, upon his return, was found to be a mentally disordered sex offender and committed to Atascadero for an indeterminate period of treatment.

Six months later doctors at Atascadero determined that nothing further could be accomplished by treating appellant. They found appellant resistant to treatment and still a menace to society. Appellant was referred back to the trial court; the criminal proceedings against him were restored to the calendar.

Upon the commencement of these proceedings appellant, pursuant to Penal Code section 1016, moved to withdraw his earlier plea of guilty and enter instead a plea of not guilty by reason of insanity. The trial court ordered an evidentiary hearing on this motion. After an extended hearing of over 20 trial days, at which expert oral and documentary evidence was presented, the trail court denied appellant's motion. Appellant was then sentenced to state prison for the term prescribed by law. This appeal followed.

The extensive evidentiary hearing held by the trial court was made necessary by the novelty of the evidence presented by appellant in support of his motion. This evidence included the fact that during his commitment at Atascadero State Hospital, appellant was discovered to possess cells with an extra male or Y chromosome. Much of the evidence at the hearing concerned the effects of this condition.

---

[1]Appellant has also attempted to appeal from the denial of this motion. This order is nonappealable (see Pen. Code, § 1237) and the purported appeal therefrom will be dismissed.

[2]The two doctors, Dr. Abe and Dr. Pollack, also examined appellant later as to his sanity and testified on that issue in the evidentiary hearing on appellant's motion to change his plea.

Appellant introduced expert testimony and studies suggesting that males who possess this extra Y chromosome, referred to as "47 XYY individuals" are likely to exhibit certain aggressive behavioral traits. Other witnesses, both prosecution and defense, added psychiatric testimony concerning appellant's mental condition.

Appellant's sole contention on appeal is that this evidence was sufficient to support a change of plea by him from "guilty" to "not guilty by reason of insanity."[3]

## DISCUSSION

It is the settled law of this state that permission to withdraw one plea and to enter another, ". . . rests in the sound discretion of the trial court and a denial may not be disturbed [on appeal] unless the trial court has abused its discretion. [Citations.]" (*People* v. *Francis*, 42 Cal.2d 335, 338 [267 P.2d 8]; see also *People* v. *Brotherton*, 239 Cal.App.2d 195, 200 [48 Cal.Rptr. 513].) While applications to change a plea should be considered "liberally," (Pen. Code, § 1018) it is equally settled that "[i]n order to justify the granting of a change of plea the trial court should have before it *clear and convincing evidence*. [Citations.]" (Italics added.) (*People* v. *McDonough*, 198 Cal.App.2d 84, 90 [17 Cal.Rptr. 643].)

Appellant introduced two distinct kinds of medical testimony to support his motion—one usual and the other unusual. The usual type was the psychiatric testimony. The psychiatrist for the defense, Dr. Drucker, testified that in his expert opinion appellant was legally insane at the time of the commission of the offense of which he was convicted.[4]

---

[3]According to a note published last year in the Georgetown Law Journal (57 Geo. L.J. 892) entitled, *The XYY Chromosome Defense,* an XYY criminal defendant in Australia was acquitted by reason of insanity and a French murderer possessing the same abnormality had his sentence reduced.

Apparently this is the first case in California reaching the appellate level that involves this version of the insanity defense and we are unaware of other cases raising this defense elsewhere in the United States. In other words, the genetic criminal is presently legally unrecognized.

The lead paragraph of an article appearing in the Los Angeles Daily Journal of December 16, 1970, is as follows:

"Genetic Scientists attending a convention of the British Society for Social Responsibility in Science here recently have emphasized that the so-called XYY 'criminal gene' theory has been thoroughly discredited."

[4]In examining Dr. Drucker to determine if he understood our legal concept of insanity, the trial court read to him part of CALJIC 801 (1967 Revision), as expressing the California version of the *M'Naghten* Rule. This part reads as follows: "Insanity, as the word is used in these instructions, means a diseased or deranged condition of the mind which renders a person incapable of knowing or understanding the nature and quality of his act, or unable to distinguish right from wrong in relation to that act.

"The test of sanity is this: First, did the defendant have sufficient mental capacity

In a rebuttal the People produced testimony of the two court-appointed psychiatrists, Dr. Abe and Dr. Pollack. Both doctors testified that in their expert opinions appellant was legally sane at the time of the commission of the offense.

The unusual kind of medical testimony introduced by appellant was that of two geneticists, Dr. Melnyk and Dr. Thompson. This testimony, which consumed almost all of the hearing, concerned the "47 XYY" Syndrome. These witnesses first testified that appellant is in fact a "47 XYY individual." They then comprehensively explained the procedures followed in identifying such individuals and described the physiological manifestations of this chromosomal abnormality.

They then testified about some of the behavioral manifestations that have been attributed to this particular chromosomal abnormality. This testimony was the principle underpinning of appellant's argument. These witnesses testified about recent studies of "47 XYY individuals" by themselves and other geneticists reported in the medical literature. These studies suggest that such individuals exhibit aggressive behavior as a causal result of this chromosomal abnormality. Appellant's position is that, as a result of his abnormal complement of chromosomes, he was legally insane at the time of the commission of the offense for which he was convicted.

The testimony and documentary evidence introduced on this point was voluminous and complex. Certain facts of special importance are apparent, however. The studies of the "47 XYY individuals" undertaken to this time are few, they are rudimentary in scope, and their results are at best inconclusive.

On the primary issue, the behavioral effects of this abnormal condition, the testimony of appellant's expert witnesses suggests only that aggressive behavior may be one manifestation of the XYY Syndrome. The evidence collected by these experts does not suggest that all XYY individuals are by nature involuntarily aggressive. Some identified XYY individuals have not exhibited such behavior.

The expert testimony on behalf of appellant was deficient in two further respects. First, the experts could not determine whether appellant's aggressive behavior, namely, the commission of an assault with intent to commit

---

to know and understand what he was doing, and second, did he know and understand that it was wrong and a violation of the rights of another? To be sane and thus responsible to the law for the act committed, the defendant must be able both to know and understand the nature and quality of his act and to distinguish between right and wrong at the time of the commission of the offense."

murder, resulted from his chromosomal abnormality.[5] Second, none of the expert witnesses on genetics testified that possession of this extra Y chromosome results in mental disease which constitutes legal insanity under the California version of the *M'Naghten* Rule quoted in footnote 4 to this opinion. Without such testimony appellant did not establish a basis for the change of plea he seeks.[6]

■ The trial court concluded that the voluminous evidence produced by appellant's expert witnesses was not clear and convincing. In so concluding the court did not err. The psychiatric testimony as to appellant's legal sanity at the time of the assault was conflicting and the trier of fact's resolution of the conflict in this testimony is binding upon us. (See *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 94 [199 P.2d 302].)

We have already pointed out three specific deficiencies in the geneticists' testimony, which renders that testimony unconvincing as to the proposition appellant had to prove, namely, that his chromosomal abnormality rendered him legally insane at the time he committed the assault.

In short a review of this voluminous expert testimony taken before the trial court convinces us that the trial court did not abuse the discretion entrusted it in not finding the scientific testimony to be clear and convincing. The evidentiary situation confronting it was not unlike those facing the courts which have excluded rather than rejected (1) expert testimony of identification by "Voiceprint" (*People* v. *King,* 266 Cal.App.2d 437, 460 [72 Cal.Rptr. 478]); (2) Kell-Cellano blood grouping tests (*Huntingdon* v. *Crowley,* 64 Cal.2d 647, 656 [51 Cal.Rptr. 254, 414 P.2d 382]); (3) expert testimony of a defendant's statements and actions under hypnosis (*People* v. *Busch,* 56 Cal.2d 868, 878 [16 Cal.Rptr. 898, 366 P.2d 314]); (4) statements made under sodium pentothal, a "truth serum" (*People* v. *Jones,* 52 Cal.2d 636, 653 [343 P.2d 577]); and (5) testimony given during a "lie detector" test (*People* v. *Carter,* 48 Cal.2d 737, 752 [312 P.2d 665]).

---

[5]The note cited in footnote 3 to this opinion states at 57 Georgetown Law Journal 904 that "presently available medical evidence is unable to establish a reasonably certain causal connection between the XYY defect and criminal conduct."

[6]In this quandary appellant urges the unconstitutionality of the *M'Naghten* Rule and suggests the adoption in this state in lieu thereof of the definition of legal sanity originated in *United States* v. *Currens* (3d Cir. 1961) 290 F.2d 751. This course is not open to us. In *People* v. *Wolff,* 61 Cal.2d 795, 802-803 [40 Cal.Rptr. 271, 394 P.2d 959], our Supreme Court held that our version of the rule was constitutional and indicated that any change therein was a legislative rather than a judicial responsibility.

The note cited in footnote 3 to this opinion points out that certain other tests of legal insanity, other than the *M'Naghten* Rule, prevailing in some other jurisdictions would afford greater opportunity for a successful XYY defense. (See 57 Geo. L.J. 897, 905-912.)

The judgment of conviction of assault with intent to commit murder is affirmed. The purported appeal from the order denying appellant leave to change his plea from guilty to not guilty by reason of insanity is dismissed.

Schweitzer, J., and Allport, J., concurred.