**Merlin OHLINGER, et al.,
Plaintiffs-Appellants,**

v.

**Robert J. WATSON, Administrator, Corrections Division of the State of Oregon, et al., Defendants-Appellees.**

**No. 78–3037.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1980.

Decided Nov. 12, 1980.

As Amended July 21, 1981.

---

Gene B. Mechanic, Salem, Or., for plaintiffs-appellants.

Thomas H. Denney, Asst. Atty. Gen., Salem, Or., argued, for defendants-appellees; Melinda L. Bruce, Asst. Atty. Gen., Salem, Or., on brief.

AMENDED OPINION

Appeal from the United States District Court for the District of Oregon.

Before BROWNING and PREGERSON, Circuit Judges, and TAKASUGI *, District Judge.

TAKASUGI, District Judge:

I. FACTUAL BACKGROUND

Appellants are two Oregon state prisoners. Both pleaded guilty to the crime of sodomy. Appellant Ohlinger's offense involved "playing, touching and fondling" of children's genitals. He was sentenced on February 15, 1961. Appellant Haddon's offense involved similar sexual activity with children. He was sentenced on November 22, 1971. Neither appellant has been involved in sexual activity with the use of force against his victim.

In lieu of the maximum sentence of fifteen years under the state sodomy statute,[1] each appellant was sentenced as a "sex offender" to an indeterminate life sentence under ORS 137.111.[2] Both appellants were committed to the Oregon State Penitentiary ("OSP") in Salem, Oregon, where they presently remain. With the exception of a three-month parole in 1973 for Ohlinger,[3] neither appellant has been released from OSP since his sentencing.

Appellants sought from the district court a declaratory judgment that their constitutional rights had been violated and an injunction directing the State to provide them with constitutionally adequate treatment. The trial court denied appellants' request for relief. Appellants appeal. They allege that appellee, officials of the State of Oregon ("State"), by confining them at OSP indefinitely without providing adequate treatment for their mental illness, denied them their liberty in violation of the due process clause of the Fourteenth Amendment and in violation of the Eighth Amendment's proscription against cruel and unusual punishment. In addition, they claimed they were not being provided with the same opportunities for treatment as persons sentenced under Oregon's "Sexually Dangerous Persons" Act,[4] in contravention of their rights under the equal protection clause of the Fourteenth Amendment.

---

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

1. ORS 167.040.

2. Under ORS 137.111 (repealed 1971), a court had the discretion to issue an indeterminate life sentence after finding that (1) the offense involved a child under the age of sixteen years; and (2) the defendant "had a mental or emotional disturbance, deficiency or condition, pre-

disposing him to the commission of ... (certain sex offenses, including sodomy) to a degree rendering the person a menace to the health and safety of others."

3. Soon after his release, Ohlinger participated in similar deviant sexual activity with young males and suffered a parole revocation.

4. ORS 426.510 et seq.

In reversing the lower court's judgment, we find that appellants are being denied due process in violation of the Fourteenth Amendment and are being subjected to cruel and unusual punishment in violation of the Eighth Amendment. We consider appellants' equal protection claim only in a limited way.[5]

## II. APPELLANTS HAVE A CONSTITUTIONAL RIGHT TO SUCH INDIVIDUAL TREATMENT AS WILL GIVE EACH OF THEM A REALISTIC OPPORTUNITY TO BE CURED OR TO IMPROVE HIS MENTAL CONDITION.

In holding that *any* treatment provided appellants is constitutionally adequate if that treatment is reasonable within the budget and time constraints imposed upon the prison, the trial court relied upon the standard articulated in *Bowring v. Godwin*, 551 F.2d 44 (4th Cir. 1977).

In *Bowring*, the petitioner had been convicted of robbery and attempted robbery and kidnapping. He was denied parole on the basis that, *inter alia*, results of his psychological evaluation indicated that he would not successfully complete a parole period. The basis of his complaint was that the State must provide him with psychological diagnosis and treatment in the hope that he may ultimately qualify for parole.

The *Bowring* court held that a person incarcerated for the commission of a crime is entitled to that psychological or psychiatric treatment which may be provided upon a reasonable cost and time basis, the essential test being one of medical necessity and not simply that which may be considered desirable. *Id.* at 47–48.

*Bowring* may be appropriate as a standard for providing psychiatric treatment to inmates who are incarcerated for criminal offenses. Incarceration under those circumstances is primarily for punitive purposes. Although rehabilitation may be desirable, it is not necessarily the primary function of such incarceration. Appellants, however, were not given indeterminate life sentences merely because they committed criminal offenses, but also because they possessed "a mental disturbance, delinquency or condition predisposing" them to the commission of sex offenses.

The State's interest in indeterminate incarceration under ORS 137.111 is to provide for the rehabilitation of a sex offender who has disclosed a tendency to be a menace to society. *Barnett v. Gladden*, 237 Or. 76, 390 P.2d 614 (1964). *See also, Jensen v. Gladden*, 231 Or. 141, 146–47, 372 P.2d 183 (1962). Such rehabilitation "may be regarded as comprising the *quid pro quo* for a longer confinement but under different terms and conditions than a defendant would undergo" if sentenced under ORS 167.040. *See Carter v. United States*, 306 F.2d 283, 285 (D.C. Cir. 1962). *See also, Standley v. United States*, 318 F.2d 700 (9th Cir. 1963); *United States ex rel. Sero v. Preiser*, 372 F.Supp. 663 (S.D.N.Y.1974). Having chosen to incarcerate appellants on the basis of their mental illness, the State has determined that it no longer has an interest in punishing appellants, but rather in attempting to rehabilitate them.

The rehabilitative rationale is not only desirable, but it is constitutionally required. *Robinson v. California*, 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1961), strongly suggests that the State may not justify appellants' extended sentence on the basis of mental illness without affording appropriate treatment. The Supreme

---

5. Appellants argue that *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1971) allows the court to compare disparate treatment between two classes of persons institutionalized under separate statutory schemes. While the two classes may provide the appropriate basis for comparison under the *Cady* standard, *See Humphrey v. Cady, supra*, 405 U.S. at 512, 92 S.Ct. at 1053, it does not necessarily follow that appellants are entitled to the *identical* treatment afforded civilly committed sex offenders. All that is required, and we so hold, is that those persons convicted for criminal sex offenses and given indeterminate life sentences on the basis of a mental illness are entitled to that treatment which is constitutionally adequate for those sex offenders committed in civil proceedings.

Court of California has so interpreted *Robinson*.[6] Indeed the State concedes that appellants are constitutionally entitled to treatment. The disagreement between the parties is solely over the level of treatment which is constitutionally required.

The district court held that "[a]ll that is required is that [appellants] be provided a reasonable level of treatment based upon a reasonable cost and time basis." We do not agree.

Constitutionally adequate treatment is not that which must be provided to the general prison population, but that which must be provided to those committed for mental incapacity. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1971).

**6.** *See People v. Feagley*, 14 Cal.3d 338, 359, 535 P.2d 373, 121 Cal.Rptr. 509 (1975).

It is settled that "A person committed as a mentally disordered sex offender is not confined for the criminal offense but because of his *status* as a mentally disordered sex offender."

\* \* \* \* \* \*

. . . [I]nvoluntary confinement for the "status" of having a mental or physical illness or disorder constitutes a violation of the cruel and unusual punishment clauses of both the state and federal Constitutions . . . unless it is accompanied by adequate treatment. (*Robinson v. California* (1962) 370 U.S. 660, 665–667 [82 S.Ct. 1417, 1419–1420, 8 L.Ed.2d 758] . . .)

**7.** *Jackson* involved a challenge to the Indiana procedure for pretrial commitment of incompetent criminal defendants under Ind.Ann.Stat. § 9–1706(a). The Supreme Court held, *inter alia*, that the indefinite commitment of a criminal defendant solely on account of lack of capacity to stand trial violates due process. The court ruled that a defendant cannot be held more than a reasonable time necessary to determine whether there is a substantial probability that he will attain competency in the foreseeable future. If it is determined that he will not attain competency, the State must institute civil commitment proceedings. *Jackson v. Indiana*, 406 U.S. 715, 731–39, 92 S.Ct. 1845, 1854–58, 32 L.Ed.2d 435 (1971).

In *McNeil*, after expiration of the prisoner's five-year criminal assault sentence, he was

*Jackson* and *McNeil v. Director, Patuxent Institutions*, 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972)[7] indicate that a person committed solely on the basis of his mental incapacity has a constitutional right to receive "such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition." *Wyatt v. Stickney*, 325 F.Supp. 781, 784 (M.D.Ala.1971) and 344 F.Supp. 373 (1972) *aff'd. sub nom., Wyatt v. Aderbolt*, 503 F.2d 1305 (5th Cir. 1974). *See also Welsch v. Likins*, 373 F.Supp. 487 (D.Minn. 1974). Adequate and effective treatment is constitutionally required because, absent treatment, appellants could be held indefinitely as a result of their mental illness, while those convicted and sentenced under the State sodomy statute need only serve the fifteen-year maximum term. *See Ragsdale v. Oberholser*, 281 F.2d 943, 950 (D.C. Cir. 1960); *Wyatt v. Stickney, supra*, 325 F.Supp. at 784; *People v. Feagley*, 14 Cal.3d 338, 121 Cal.Rptr. 509, 535 P.2d 373.[8]

kept in continual confinement, by *ex parte* order, for an examination to determine whether he should be committed for an indefinite period pursuant to the Maryland Defective Delinquency Law, Md.Ann.Code, art. 3B (1971). On his motion for post-conviction relief, the Supreme Court held that the absence of procedural safeguards commensurate with long-term commitment, violated the Due Process Clause. He was, therefore, released. *McNeil v. Director, Patuxent Institutions*, 407 U.S. 245, 252, 92 S.Ct. 2083, 2088, 32 L.Ed.2d 719 (1972).

Although *Jackson* and *McNeil* dealt primarily with procedural matters, they have been interpreted to have substantive import. *Welsch v. Likins*, 373 F.Supp. 487, 497 (D.Minn.1974); *Davy v. Sullivan*, 354 F.Supp. 1320, 1329–30 (M.D.Ala.1973); *Martarella v. Kelley*, 349 F.Supp. 575, 601–02 (S.D.N.Y.1972); *Inmates of Boys' Training School v. Affleck*, 346 F.Supp. 1354, 1371–72 (D.R.I.1972).

**8.** The State has attempted to distinguish *Jackson* and its progeny on the basis that Jackson was not convicted of a crime and that the subsequent cases generally deal with persons who were involuntarily committed through civil proceedings.

The State's argument fails for two reasons. First, appellants' indeterminate sentences for mental illness *in lieu* of the maximum criminal penalty for sodomy makes their sentences analogous to civil commitment. Second, although no case appears with an identical fact situation as the case at bar, the cases do consider fact

Appellants are not requesting the best possible treatment nor are they demanding a guarantee to be cured of their mental incapacity. They only request a treatment program that will address their particular needs with the reasonable objective of rehabilitation. Lack of funds, staff or facilities cannot justify the State's failure to provide appellants with that treatment necessary for rehabilitation. *Lora v. Bd. of Education,* 456 F.Supp. 1211, 1292 (E.D.N.Y.1978); *Wyatt v. Stickney, supra,* 325 F.Supp. at 782–83, 344 F.Supp. at 377.

The standard adopted by the trial court is clearly erroneous. Nevertheless, the record must be examined to determine whether the treatment offered appellants at OSP will give each of them a realistic opportunity to be cured or to improve his mental condition.

## III. THE RECORD OVERWHELMINGLY INDICATES THAT APPELLANTS ARE NOT RECEIVING CONSTITUTIONALLY ADEQUATE TREATMENT.

Extensive evidence was submitted at the trial pertaining to the effect of the OSP program on appellants' mental condition and the degree and kind of treatment needed to provide them with an opportunity for rehabilitation. The parties stipulated that appellant Ohlinger received absolutely no treatment of any kind between 1961 and 1971.

The evidence indicates that appellants require intensive individual therapy which includes a program concentrating on development of social skills, a reconditioning process, work in sexual fantasies and dreams and community passes to gradually integrate them into the community.[9]

These methods are not available at OSP. They are available at Oregon State Hospital ("OSH"). Dr. McGovern, the only witness recognized by the trial court as an expert in the treatment of sex offenders, testified that appellants would not be a security risk and that because appellants were not physically abusive sex offenders they would be very receptive to treatment in a hospital-residential facility.

Although appellants participated in group therapy, the sessions were for only one-and-a-half to two hours per week. Dr. Nance testified that while he was the prison psychologist he had only one group of eight to twelve members out of the approximately two hundred fifty sex offenders housed at OSP. Most of these inmates were not sentenced under ORS 137.111. Dr. Nance also provided six to eight hours a week of individual therapy to the entire prison population of 1700–1900. Less than 20% of the individual therapy was devoted to sex offenders.

The witnesses further testified that the current level of treatment, predominantly group therapy, was not only inadequate and ineffective, but possibly detrimental in some circumstances. Appellant Haddon had participated in the group sessions but withdrew because he feared that the information about his sex offense would eventually reach the rest of the prison population. The evidence indicates that Haddon's fear was reasonable. Sex offenders are looked upon as falling somewhere in the lower echelon of the inmate population and are, therefore, most susceptible to physical attacks from other inmates. One witness testified that, "sex offenders find their very existence in prison one of moment to mo-

situations wherein an inmate was subjected to a post-conviction extended sentence, *McNeil v. Director, Patuxent Institutions,* 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972), and wherein a person convicted of a sex offense was committed to a "hospital unit" within a prison for an indefinite period upon a finding that he was suffering from a mental disorder, *People v. Feagley,* 14 Cal.3d 338, 535 P.2d 373, 121 Cal.Rptr. 509 (1975), or to determine whether he waS in need of treatment for a

mental disorder. *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1971).

**9.** The State distorts the testimony of Dr. Davis. Dr. Davis stated that psychotherapy could be of little value to appellants. He explained, however, that by psychotherapy he meant only discussions of problems. Dr. Davis agreed that the methods considered necessary by Dr. McGovern would be very helpful to appellants.

ment anxiety if not occasionally better described as terror."

Dr. Seidler, Chief of Psychology at OSP, stated that Haddon was released from the group not because he could no longer benefit from any therapy, but "that given the strictures placed upon (him) and ways (we) could treat him inside the penitentiary, that he could no longer benefit from the therapy of the penitentiary." Dr. McGovern summarized the group treatment as follows: "I think many of these people (are) placed into groups for good reasons to help them with their general concerns, but not with their sexual problems."

The record further indicates that staff and services at OSP are well below minimum standards proposed by the American Corrections Association. In fact, Dr. Seidler conceded that he had no accurate records of the treatment provided appellants. He also estimated the recidivism rate of approximately 80 per cent for sex offenders treated at OSP as compared with Dr. McGovern's testimony of a recidivism rate of approximately 15 per cent at institutions providing what he considered adequate treatment programs.

Finally, appellants were given the opportunity to participate in regular prison social activities, such as clubs and sports. While such activities may be of some benefit to appellants, they are clearly not directed at treating appellants' mental disorders.

It is clear from the evidence that all but one witness concluded that the treatment offered appellants at OSP was insufficient for dealing with their needs. They could not hope to benefit from that treatment. "The exact contours of relief should be left to the sound discretion of experts in the field." *Bowring v. Godwin, supra*, 551 F.2d at 48. The treatment provided appellants, therefore does not give them a reasonable opportunity to be cured or to improve their mental conditions.

The State's proposed plans to improve its treatment program at OSP do not mitigate the inadequacy of the treatment provided appellants. The target date for implementation of the improvements was January 1, 1979. However, the details of the program are undefined. It is unclear whether the improvements would incorporate the methods which the experts indicated would be adequate to treat appellants. The State should not be allowed "to defeat injunctive relief by protestations of repentance and reform. *United States v. Oregon State Medical Society*, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952)." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *United States v. Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968).

OSH appears to be the optimum alternative treatment facility to the constitutionally inadequate facility at OSP. Because appellants will not be voluntarily accepted into OSH, the district court shall order the State to transfer appellants to OSH or to some other suitable treatment facility. Reversed and remanded.