[Crim. No. 43039. Second Dist., Div. Six. Aug. 11, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN GEORGE BRADLEY, Defendant and Appellant.

COUNSEL

Mary J. Madsen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ABBE, J.—Appellant (Bradley) challenges the extension of his commitment as a mentally disordered sex offender (MDSO) by jury trial under former Welfare and Institutions Code section 6316.2. Bradley contends the court was without jurisdiction to extend his commitment after repeal of the MDSO statutes. He further contends that even if the court had jurisdiction, it erred

in the instruction defining the term "bodily harm" for purposes of determining whether appellant's mental condition met the standard for extended commitment. Finding no error, we affirm.

■ This court has previously resolved the jurisdictional issue raised by appellant. We held that the language of section 3 of chapter 928 of Statutes 1981 clearly indicated that the Legislature intended the repeal of the MDSO statutes (art. I, ch. 2 of pt. 2 of div. 6, Welf. & Inst. Code, including §§ 6300-6330) to be prospective only; it was not intended to affect the retention of persons already committed or the extension of their terms as provided in former Welfare and Institutions Code section 6316.2. (*People v. Superior Court (Martin)* (1982) 132 Cal.App.3d 658, 663 [183 Cal.Rptr. 563].) Therefore, the trial court had jurisdiction to extend Bradley's commitment.

■ Appellant's only other contention is that the court erred in instructing the jury that "bodily harm" as used in the instructions ". . . includes the intentional and unlawful use of physical force upon the person of another . . . [and] includes the offense of oral copulation, when that act was committed by force against the will of the other person." Oral copulation was defined as provided in Penal Code section 288a, subdivision (a).

The precise definition of "bodily harm" is at issue here because the consensus of expert testimony at the hearing was that Bradley was likely to continue to engage in conduct similar to that which resulted in his conviction prior to his initial commitment. He pled to a violation of Penal Code section 288a, subdivision (f), oral copulation on an unconscious person, after breaking into the home of a woman he did not know, committing oral copulation on her while she slept and then having sexual intercourse with her. There was testimony that Bradley's sexual behavior had progressed in stages from voyeurism and that there was some risk he would become more aggressive.

Appellant argues that the term "bodily harm" should be defined for MDSO purposes the same way it is defined within the context of Penal Code section 209 regarding kidnap with bodily harm. We reject this construction as inconsistent with legislative intent and case law.

The procedure and standard for extending the commitment of a MDSO is set by former Welfare and Institutions Code section 6316.2.[1] The section in relevant part requires a finding beyond a reasonable doubt that the person has been convicted of a "sex offense" as defined, has been previously com-

---

[1]All further references are to Welfare and Institutions Code unless otherwise specified.

mitted as a mentally disordered sex offender and "[s]uffers from a mental disease, defect or disorder, and as a result of such mental disease, defect or disorder, is predisposed to the commission of sexual offenses to such a degree that *he presents a substantial danger of bodily harm to others.*" (§ 6316.2, subd. (a)(2). Italics added.) Prior to its amendment in 1979, the italicized language read "he presents a serious threat of substantial harm to the health and safety of others."

The amendment made two changes in the standard: it redefined the degree of risk presented by the person's predisposition to commit sex offenses, e.g., "serious threat" versus "substantial danger"; it also redefined the nature of the societal interest being protected, e.g., "bodily harm to others" versus "substantial harm to the health and safety of others." The latter version, under a substantially similar predecessor statute, had been held to include psychological trauma without the likelihood of physical injury. (*People* v. *Stoddard* (1964) 227 Cal.App.2d 40 [38 Cal.Rptr. 407].) Under the 1979 amendment, persons who are predisposed to commit sexual offenses involving only psychological harm to others are no longer subject to extended commitment.

Neither version nor any other statute defines "bodily harm." It is therefore necessary to ascertain the meaning of the phrase. In doing so, we are guided by well-settled principles of statutory construction. ■ It is true, as appellant claims, that " '[W]hen language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. [¶] The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' [Citations.]" (*People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186].)

■ While MDSO commitments and extensions are technically civil in nature, they provide for a period of confinement for treatment in lieu of criminal punishment and are penal in character. (*In re Moye* (1978) 22 Cal.3d 457, 463 [149 Cal.Rptr. 491, 584 P.2d 1097].) The foregoing rule, however, is subordinate to the one providing that ". . . when interpreting a statute, . . . its purpose is paramount: we 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.]" (*People* v. *Davis, supra,* 29 Cal.3d 814, 828.)

"Bodily harm" for purposes of distinguishing kidnaps under Penal Code section 209 has been defined in CALJIC No. 9.22 (1982 rev.) as meaning "substantial injury to the body of the person . . . above and in addition to the force which is necessarily involved in the commission of such kidnap-

ping." This definition was derived from a series of cases interpreting section 209 beginning with *People* v. *Jackson* (1955) 44 Cal.2d 511 [282 P.2d 898]. Those cases all made it clear, however, that such definition was based upon a determination of legislative intent. (See, e.g., *id.*, at pp. 516-517; *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1133 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].)

The purpose of the phrase in the kidnap statutes is to distinguish between simple kidnaps and those where bodily harm is inflicted on the victim. (*People* v. *Jackson, supra,* 44 Cal.2d 511, 516-517.) Since use of force is almost always necessarily involved in accomplishing a kidnaping, it was necessary to distinguish "bodily harm" kidnapings, i.e., where greater punishment is provided, from the others. Therefore, the legislative intent in using the term "bodily harm" clearly required substantial injury to the body over and above that necessarily involved in accomplishing the kidnap. The purpose of its use in section 6316.2, however, is not to differentiate punishment among those convicted of criminal activity.

■ The established case law prior to *People* v. *Jackson, supra,* 44 Cal.2d 511, had defined "bodily harm" within the context of section 209 using the common law tort definition as " 'any touching of the person of another against his will with physical force in an intentional, hostile and aggravated manner, or projecting of such force against his person.' " (*People* v. *Tanner* (1935) 3 Cal.2d 279, 297 [91 Cal.Rptr. 656, 42 A.L.R.3d 1408]; *People* v. *Chessman* (1951) 38 Cal.2d 166 [238 P.2d 1006].) This definition is substantially similar to that used here. It is consistent with the purposes of the MDSO extended commitment statute and is the appropriate standard for such commitments.

■ The purpose of the MDSO act was to protect the public from mentally disordered offenders previously convicted of specified sex offenses by confining them during such period as they continue to be a danger to society and to provide care and treatment calculated to eliminate their antisocial compulsions. (*People* v. *Oglesby* (1977) 67 Cal.App.3d 34 [135 Cal.Rptr. 640].) In this respect it is most similar to other involuntary commitment statutes allowing long term renewable commitment for persons adjudicated under the criminal justice system on proof they remain dangerously disturbed (for examples, see § 1800 regarding persons committed to the California Youth Authority and Pen. Code, § 1026 et seq., relating to persons found not guilty by reason of insanity). It also is somewhat similar to the involuntary commitment of persons not necessarily criminally adjudicated. (See §§ 5150, 5250, 5300, relating to dangerous or gravely disabled persons and § 6500 relating to dangerous mentally retarded persons.)

While the standard of dangerousness required for commitment varies "[t]he distinctions among these definitions appear more form than substance." (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 176 [167 Cal.Rptr. 854, 616 P.2d 836].) Other enactments relating to criminal adjudications which provide for extended commitments generally require a showing of substantial danger of physical harm to others (Pen. Code, §§ 1026.5, subd. (b)(1), 1600 et seq.; 1800 et seq.); none of them requires proof of a danger of serious, substantial or significant physical (or bodily) harm.

To construe the phrase "bodily harm" as requiring substantial physical harm or injury to others would result in a standard for MDSO extensions different than that for other similarly situated persons. ■ "It is an established rule of statutory construction that similar statutes should be construed in light of one another [citations] and that . . . similar phrases appearing in each should be given like meanings. [Citations.]" (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 585 [146 Cal.Rptr. 859, 580 P.2d 274].) In light of this rule, the Legislature clearly did not intend such a result.

■ The definition of "bodily harm" urged by appellant is almost identical to that used by our Supreme Court in defining "great bodily injury" for purposes of Penal Code section 461 as then written in *People* v. *Caudillo, supra,* 21 Cal.3d 562. In reaching this interpretation of the meaning of "great bodily injury" the court distinguished that phrase as used within various provisions of the Penal Code from "bodily harm" used in others. The court also determined under earlier cases oral copulation constitutes bodily harm defined as "any touching of the person of another against his will with physical force in an intentional, hostile and aggravated manner, or projecting of such force against his person" and it could not, therefore, constitute "great bodily injury." (*Id.,* pp. 577, 587.)

The "bodily harm" provision in section 6316.2 was added by amendment shortly after the *Caudillo* case was decided. As stated by the court in *Caudillo,* ". . . we may assume that the Legislature was aware that we had construed the term in this manner. [Citation.]" (*People* v. *Caudillo, supra,* 21 Cal.3d 562, 586.) Had the Legislature intended to allow extended commitments for only those MDSO's who constitute a substantial danger of committing sex offenses involving great or serious bodily harm to others it surely would have so stated. That the Legislature would have so stated is supported by the various phrases used in section 6500 and Penal Code sections 1026.5, subdivision (b)(1) and 1601, for example, which differentiate among offenders for purposes of similar involuntary commitments. In these statutes the Legislature obviously uses "great bodily injury" as meaning

something different than mere "bodily harm" or "physical harm." Therefore, the court did not err in the manner in which it defined "bodily harm."

The judgment is affirmed.

Stone, P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied September 2, 1983, and appellant's petition for a hearing by the Supreme Court was denied October 6, 1983.