[No. D001431. Fourth Dist., Div. One. Mar. 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER GARLAND LAMPORT, Defendant and Appellant.

**COUNSEL**

Garry, Dreyfus & McTernan and John T. Philipsborn for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—Peter Garland Lamport appeals an order extending his commitment as a mentally disordered sex offender (MDSO) after a court trial, contending the evidence was insufficient to sustain the court's finding his predisposition to commit sexual offenses against minor males presents a substantial degree of bodily harm to others. We find the physical sexual contacts involved in Lamport's pedophilic behavior constitute bodily harm within the meaning of former Welfare and Institutions Code[1] section 6316.2. We affirm the order.

I

██,██ Lamport's MDSO commitment may only be extended if he has a mental disease, defect or disorder predisposing him to commit sexual offenses *and* presents a *substantial danger of bodily harm to others* (former § 6316.2).[2]

 Lamport concedes there is ample evidence he suffers from a mental disorder, pedophilia, which predisposes him to engage in sexual conduct with minor males, and that he is likely to continue to engage in the type of sexual contact with minors which led to his original commitment in 1979. However, he contends that type of conduct, nonviolent oral copulation and masturbation, is not shown to involve bodily harm to others and as a result there is no showing he is a substantial danger to inflict such bodily harm if he reoffends.

The court considered a report prepared by Drs. Hansen and Baldwin, a letter dated July 28, 1983, and another dated October 4, 1983.[3] Dr. Hansen stated he first examined Lamport in 1982 and determined a two-year extension of his basic three-year commitment to Patton State Hospital should be granted. In evaluating Lamport for a second two-year commitment on February 7, 1984, he found Lamport was in touch with reality but still suffered from pedophilia causing him to have sexual drives toward minor males. Lamport admitted to Dr. Hansen he still had sexual fantasies regarding children.

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]Section 6316.2 and associated MDSO laws were repealed by Statutes 1981, chapter 928, section 2, page 3485; however, it remains applicable to persons previously committed as mentally disordered sex offenders and subject to recommitment. (*Baker* v. *Superior Court* (1984) 35 Cal.3d 663, 667-670 [200 Cal.Rptr. 293, 677 P.2d 219].)

[3]The October 4 letter is referred to in the doctors' report; however, neither letter is included in the record on appeal.

Dr. Hansen admitted there was no evidence Lamport sodomized his victims or physically injured their bodies. Hansen stated he believed Lamport posed a substantial danger of bodily harm to others. However, he emphasized he was referring only to psychological harm because there was no evidence of past physical damage or physical threats and no evidence that Lamport represents such danger to any person in the future.

The People argue that psychic trauma alone is sufficient to establish the legislative requirement of "bodily harm," stressing that emotional reactions often lead to physical problems which can harm the body such as gastrointestinal, respiratory, circulatory, skeletal and neurological illnesses. However, the record does not support this speculation and Dr. Hansen did not suggest any such likelihood from Lamport's activities.

## II

Initially, we distinguish between the elements of proof necessary to find a person is an MDSO in the first instance (dangerous to the health and safety of another, § 6300) and the more narrow finding that one poses a substantial danger of bodily harm to others, permitting the initial commitment to be extended. We further emphasize that earlier versions of section 6316.2 allowing extensions required only a showing the person presented a "serious threat of substantial harm to the health and safety of others."

Because the findings required for an initial commitment and those required under previous recommitment statutes could be satisfied by showing only potential emotional harm, the Legislature need not have changed its recommitment criterion to "a substantial danger of *bodily* harm to others" unless it meant to limit extending commitments to those who threaten actual physical harm to potential victims. Without conceding this point, the People argue the evidence Lamport fondled the genitals of his victims satisfies the requirement of bodily harm. The People speculate Lamport could injure the children's genitals while playing with them should he become aroused during sex play and become rough with them. They recount the possibility of his transmitting serious diseases.

The issue raised here has been generally discussed in the case of *People* v. *Bradley* (1983) 146 Cal.App.3d 721 [194 Cal.Rptr. 549]. Each party interprets *Bradley's* holding as favoring its position. In *Bradley,* the appellate court approved a jury instruction defining bodily harm as "'the intentional and unlawful use of physical force upon the person of another . . . [including] the offense of oral copulation, when that act was committed by force against the will of the other person.'" (*Id.,* at p. 724.) In tracing the historical usage of the term "bodily harm" in various contexts, the court

approved the common law tort definition of " ' "any touching of the person of another against his will or with physical force in an intentional, hostile and aggravated manner, or projecting of such force against his person." ' [Citations.]" (*Id.*, at p. 726.) The appellate court stated this definition is consistent with the purposes of the MDSO extended commitment statute. We believe that is a correct standard.

We reject the People's claim that potential emotional harm alone satisfies the requirement of showing "bodily harm." Were this the case, only those mentally disordered sex offenders who have been cured would be released. However, the extension criteria set forth in section 6316.2 are in the conjunctive. Therefore, a plain reading shows that no commitment may be extended where the MDSO is presently found to have a mental disorder predisposing him or her to commit sexual offenses unless there also is a substantial danger of bodily harm to others. This presupposes persons will be evaluated who are likely to commit sexual offenses as a result of a mental disease, defect or disorder who do not represent a substantial danger of bodily harm to others. We can conceive of no illegal sexual act which does not pose a substantial risk of emotional harm to its victim. Thus, allowing recommitment of persons whose sexual predispositions only pose a danger of emotional harm to others would permit an extension in every case, even those in which the future activity is shown to be limited to illegal sexual conduct not involving physical contact. We believe the Legislature intended to single out the more dangerous sex offenders for commitment extensions which maintain them in custody beyond any period of incarceration they could have served in a penal institution for the crimes they committed.

The factual question then is does the proof here show Lamport is likely to touch another's person against his will with physical force in an intentional, hostile and aggravated manner. This is not a case like *Bradley* where evidence shows the sex offender broke into the home of a sleeping stranger for sexual purposes, coupled with evidence he had become more aggressive. Bradley clearly had, and was likely to continue physically assaulting the unwilling victims of his sexual propensities. Here, there is no history Lamport even physically overcame his victim's resistance by force. His selection of extremely young children made this unnecessary.

However, here, Lamport is proved to be likely to engage in sexually touching, masturbating and orally copulating young children too young to knowingly consent. The physical force required to perform these sex acts on youngsters while Lamport is sexually aroused, meets the standard for bodily harm approved in *Bradley*. Although the trial court refused to state

the standard it was using, we assume it followed *Bradley* as binding precedent. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Order affirmed.

Brown (Gerald), P. J., and Butler, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 2, 1985.